IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

```
                              )
THERESA A. SKELTON,           )
          Plaintiff,          )
                              )
          v.                  )    Civil Action No. 04-0627
                              )
JO ANNE B. BARNHART,          )    Judge Cercone
COMMISSIONER, SOCIAL SECURITY )    Magistrate Judge Hay
ADMINISTRATION,               )
                              )
          Defendant.          )
```

### REPORT AND RECOMMENDATION

I.  RECOMMENDATION

        It is respectfully submitted that the Motion for
Summary Judgment filed by Plaintiff [dkt. no. 7] be denied.  It
is further recommended that the Motion for Summary Judgment filed
by the Defendant [dkt. no. 10] be granted and that the decision
of the Commissioner denying Plaintiff's application for
disability insurance benefits and supplemental security income be
affirmed.

II.  REPORT

        **A.   Procedural History**

        Plaintiff Theresa A. Skelton ("Plaintiff") brought this
action under 42 U.S.C. § 405(g) for judicial review of the final
decision of the Commissioner of Social Security ("Commissioner")
denying her claim for supplemental security income ("SSI") under
title XVI of the Social Security Act (Act).  42 U.S.C. §§ 1381-
1383f.

Prior to filing her current claim for SSI, Plaintiff applied for disability insurance benefits ("DIB") on May 9, 1994 (Tr. 14, 106).  The case proceeded through the administrative process and, on June 27, 2001, an administrative law judge ("ALJ") issued a decision in which he found that Plaintiff was disabled for a closed period from June 3, 1993 through June 26, 1996, due to limitations arising from a "severe" back impairment (Tr. 14, 87-105).  Plaintiff did not seek judicial review of the ALJ's June 27, 2001 decision regarding her May 9, 1994 DIB application (Tr. 14).

In her current application for SSI benefits filed on June 4, 2001, Plaintiff alleges that she has been disabled since June 3, 1993, due to a back impairment. (Tr. 129-33, 141).  The state agency denied her application on November 27, 2001 (Tr. 109-10).  Thereafter, Plaintiff requested a hearing before an ALJ.

The case was heard before an ALJ on April 20, 2002 (Tr. 22-86).  Plaintiff, who was represented by counsel, and a vocational expert, Eugene Czuczman, testified at this hearing (Tr. 22-86).  The ALJ denied Plaintiff's current claim for benefits in a decision dated July 25, 2002 (Tr. 11-20).

The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making it the final decision of the Commissioner for purposes of this judicial review (Tr. 7-9).

It should be noted that the ALJ found no grounds to reopen the June 27, 2001 decision (Tr. 14-15).[1]  Therefore, the Commissioner's final decision of July 25, 2002, is the only decision at issue before this court (Tr. 14-15).  The relevant time period for adjudication in this matter is from June 4, 2001, the date Plaintiff filed her current application, through July 25, 2002, the date of the ALJ's decision.  See 20 C.F.R. §§ 416.330, 416.335.

### B.   Factual Background

Plaintiff was born on June 12, 1961, and was 41 years old at the time of the ALJ's decision (Tr. 91).  Plaintiff completed ten grades of formal schooling and previously worked as a cashier, personal care business owner/operator, and, most recently, certified nursing assistant (Tr. 147, 154).

---

[1]    As the Commissioner has pointed out, the Supreme Court has ruled that in the absence of a constitutional challenge, federal courts do not have subject matter jurisdiction to review the Commissioner's discretionary decisions in regard to the reopening of prior applications.  Califano v. Sanders, 430 U.S. 99, 107-08 (1977).  When Plaintiff did not timely appeal the June 27, 2001 decision, it became the final, binding decision of the Commissioner.  See 20 C.F.R. §§ 416.1405, 416.1455, 416.1487.  As no constitutional challenge has been raised in this case, the Court may not review the Commissioner's discretionary determination not to reopen the  June 27, 2001 decision.  See Califano v. Sanders, 430 U.S. at 107-08.

### C.   **Medical History**[2]

As noted, the period at issue in this case dates from June 4, 2001, when Plaintiff filed her current application, through July 25, 2002, the date of the ALJ's decision (Tr. 15).

On June 8, 2001, Plaintiff presented at Uniontown Hospital complaining of chest pain and shortness of breath (Tr. 240).  Cesar Noche, M.D., examined Plaintiff and found no specific reason for the chest pain, but noted that bronchitis was causing her breathing difficulty (Tr. 239).  Blood tests, chest x-rays, and an EKG were all normal (Tr. 242-51).

Janos Katanics, M.D., examined Plaintiff on June 12, 2001, and noted that she had chest tightness due to bronchitis (Tr. 329).  However, Dr. Katanics's examination, including his examination of her musculoskeletal and neurological system, was essentially unremarkable (Tr. 329).

On August 7, 2001, Plaintiff sought counseling at Chestnut Ridge Counseling Services, Inc. (Tr. 391-92).  Plaintiff indicated that she was depressed and had anxiety (Tr. 392).

Sanat Shroff, M.D., conducted a medical evaluation of Plaintiff on August 17, 2001 (Tr. 294-301).  Upon examination, Dr. Shroff noted that while Plaintiff had tenderness over the lumbar spine, her range of motion of the hips, knees, ankles, and

---

[2]   Because Plaintiff's medical history is not in dispute, much of the recitation here is excerpted from the comprehensive summary set forth in the Commissioner's brief.

upper extremities was unremarkable (Tr. 296).  Plaintiff's leg raises were limited to forty degrees on the right and forty-five degrees on the left and she was unable to bend more than forty-five degrees at the waist (Tr. 296).  However, she had no muscle atrophy, no joint swelling or tenderness, intact distal pulses, and an unremarkable gait (Tr. 296-97).  In addition, Plaintiff had normal power, normal tone, normal coordination, and normal reflexes (Tr. 297).  Dr. Shroff concluded that Plaintiff could perform a range of light work with occasional postural activities (Tr. 300-01).

On August 23, 2001, Plaintiff complained of a cough, nasal congestion, and left ear pain (Tr. 326).  Dr. Katanics noted that Plaintiff's lungs were clear with no wheezes, rales, or rhonci (Tr. 327).  He also noted only "slight" tenderness over the lumbosacral area with no sciatica tenderness and no one-sided weakness or gross focal changes (Tr. 326-27).  Dr. Katanics concluded that Plaintiff's bronchial asthma was stable and her mild upper respiratory symptoms were probably viral (Tr. 327).

Also on August 23, 2001, Plaintiff underwent a psychiatric evaluation conducted by P. Iyengar, M.D., a psychiatrist at Chestnut Ridge (Tr. 385-87).  Upon examination, Dr. Iyengar noted that while Plaintiff had a sad mood and reactive affect, she also had goal-directed thoughts, was alert and oriented, had an adequate memory, average intelligence,

intact insight and judgment, and did not exhibit impulsive behavior (Tr. 386).  Dr. Iyengar diagnosed major depression and opined that her global assessment of functioning (GAF) was 55 (Tr. 386).[3]

Dr. Iyengar re-examined Plaintiff on September 13, 2001, and reported that Plaintiff was feeling "100 percent better" (Tr. 384).  Although she complained of being a "little tired," Plaintiff was sleeping well and thinking clearly (Tr. 384).

On October 1, 2001, Dr. Shroff re-evaluated Plaintiff and conducted pulmonary testing (Tr. 286-93).  Dr. Shroff again noted that she had normal range of motion in the upper and lower extremities, had an unremarkable neurological examination, had no gross motor or sensory deficits, and had an unremarkable gait (Tr. 287).  He  also noted that Plaintiff's pulmonary functioning was within normal limits (Tr. 287).  After his second evaluation,

---

[3]    A GAF score is used to report an individual's overall level of functioning with respect to psychological, social, and occupational functioning. The GAF scale is divided into ten ranges of functioning. A GAF rating is within a particular decile if either the symptoms severity or the level of functioning falls within the range.

A GAF score of between 51 and 60 indicates:

> **Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **or moderate difficulty in social, occupational or school functioning** (i.e., few friends, conflicts with peers or co-workers).

*Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV™") pp. 32-34 (American Psychiatric Association, Task Force on DSM-IV (4th ed. (Text Revised) 2000) (emphasis in original).

Dr. Shroff again concluded that Plaintiff could perform a range of light work with occasional postural activities, but noted that she must avoid cold temperatures and humidity due to her bronchial asthma (Tr. 289-90).

On October 9, 2001, John Wisilosky, R.N., reported that Plaintiff was feeling less depressed and thought her medication was working well (Tr. 383). Plaintiff was sleeping well and had no thoughts of harming herself or anyone else (Tr. 383).

Dr. Katanics re-examined Plaintiff on October 15, 2001, and noted that she complained of a cough, periodic wheezing, and sinus congestion (Tr. 323). Despite her complaints, Plaintiff's examination was essentially normal (Tr. 324). Significantly, Dr. Katanics found no back or flank tenderness (Tr. 324). When Dr. Katanics re-examined Plaintiff on October 29, 2001, he diagnosed chronic sinusitis (Tr. 322).

On November 16, 2001, Roland Singer, Ph.D., a state agency psychologist, reviewed the evidence of record and concluded that Plaintiff had an affective disorder, which caused moderate restrictions in daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in concentration, persistence, and pace, but no episodes of decompensation (Tr. 303-13). He also noted that Plaintiff was not significantly limited in the ability to remember locations and work-like procedures; remember and carry out short, simple

instructions; sustain an ordinary routine; make simple work-related decisions; ask simple questions; maintain appropriate behavior; and be aware of normal hazards (Tr. 317-18).

Dr. Iyengar examined Plaintiff on November 6, 2001, and noted that she was "doing pretty good" (Tr. 381). Plaintiff's depression improved, she was sleeping better, and she had no dangerous thoughts or psychosis (Tr. 381).

On December 12, 2001, Plaintiff reported that she was going to work in a nursing home three days a week and noted that she would "feel happier" when she started to work again (Tr. 380).  Plaintiff also reported that she "loves to cook and bake for others" and noted that her grandchildren "help her out of her depression" (Tr. 380).

On December 27, 2001, Plaintiff reported to her counselor that she would be sitting for three elderly people one day a week for seven hours a day (Tr. 379).

### C.   Hearing Testimony and ALJ Decision

At the administrative hearing, Plaintiff testified that back pain, leg pain, depression, and asthma prevented her from working (Tr. 37-41).  However, Plaintiff noted that her physical impairments had not changed or worsened since June 27, 1996, which was the date the previous ALJ determined that Plaintiff's period of disability ended (Tr. 71-72, 90-105).  Plaintiff also

stated that she had carpal tunnel syndrome, but admitted that it did not prevent her from crocheting (Tr. 67). Plaintiff further testified that she cooked four days a week, read novels, did laundry, swept floors, dusted, did the dishes, went shopping, watched television, and occasionally attended church (Tr. 47-52).

    With regard to Plaintiff's claim currently at issue, the ALJ found that while Plaintiff had physical and mental impairments which were "severe" as defined by the regulations, the impairments did not meet or equal any listed impairments (Tr. 19, Finding No. 5). The ALJ also found that Plaintiff retained the functional capacity to perform low stress, light work with a sit/stand option (unskilled work requiring one-step or two-step instructions with routine, repetitive processes involving things rather than people), which required no more than four hours of standing/walking and no climbing, kneeling, crawling, stooping, or crouching on more than a rare occasion; and which required no exposure to pulmonary irritants, temperature extremes, dampness, wetness, excessive humidity, dangerous machinery, and unprotected heights (Tr. 20, Finding No. 7). In light of her residual functional capacity finding, the ALJ concluded that Plaintiff could not perform any of her past relevant work (Tr. 20, Finding No. 8).

    The ALJ then asked the vocational expert to assume an individual of Plaintiff's age, education, and work history who

was limited to low stress, light work with a sit/stand option
(unskilled work requiring one-step or two-step instructions with
routine, repetitive processes involving things rather than
people), which required no more than four hours of
standing/walking and no climbing, kneeling, crawling, stooping,
or crouching on more than a rare occasion; and which required no
exposure to pulmonary irritants, temperature extremes, dampness,
wetness, excessive humidity, dangerous machinery, and unprotected
heights (Tr. 79-81).  The vocational expert testified that such
an individual would be able to perform work as a photographic
machine operator, garment folder, plastic design applier,
assembler of printed products, laminator, and taper of printed
circuit layouts, all of which existed in significant numbers in
the national economy (Tr. 81-83).

        The ALJ found, based on vocational expert testimony,
that Plaintiff could perform other work that existed in
significant numbers in the national economy, and, thus, was not
disabled within the meaning of the Act (Tr. 20, Finding No. 10).

**D.   Standard of Review**

_____In reviewing the administrative determination by the
Commissioner, the question before the court is whether the
Commissioner's decision is supported by substantial evidence.  42
U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971);
Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).  Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987).  Substantial evidence is defined as less than a preponderance and more than a mere scintilla.  Perales, 402 U.S. at 402.  If supported by substantial evidence, the Commissioner's decision must be affirmed.  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

A five-step process is used to determine disability eligibility, see 20 C.F.R. § 404.1520.[4]  In this case, the ALJ made her determination at the fifth step.  At the fifth step, the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity,[5] age, education, and past work experience, he can perform work that exists in significant numbers in the regional or national economy.  42 U.S.C. § 423(d)(2)(A); see also Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000).

---

[4]   The five-step sequential evaluation process for disability claims requires the Commissioner to consider whether a claimant: (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his past relevant work, and (5) if not, whether he can perform any other work in the national economy.  20 C.F.R. §§ 404.1520, 416.920.

[5]   A claimant's "residual functional capacity" is what he can do despite the limitations caused by his impairments. Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001).

11

### E.   Discussion

Plaintiff's first argument is that the instant case should be remanded because the ALJ's step three analysis was conclusory and did not comply with Burnett v. Commissioner of Social Sec. Admin., 220 F.3d 112 (3d Cir. 2000) (App.'s Br. at 16-17).  In particular, Plaintiff claims that the ALJ failed to mention the specific listing criteria she used to evaluate Plaintiff's severe mental and physical impairments and did not identify the particular medical evidence that supported her decision.  According to the Plaintiff, the ALJ should have evaluated Plaintiff under Listing 12.04 Affective disorders and Listing 1.04 Disorders of the spine.  Plaintiff argues that she met these listings and thus, should have been found disabled at the third step.

We note at the outset of our discussion that in arguing that she met Listing 12.04, Plaintiff improperly relies on the November 2000 report of Lanny Detore, Ed.D., and mistakenly suggests that the ALJ's failure to mention and consider this evidence constitutes error (Pl.'s Br. at unnumbered pages 8-12).  As the Commissioner points out, Dr. Detore conducted his evaluation of Plaintiff prior to the period at issue and, therefore, his findings and opinions are not a fair assessment of Plaintiff's condition during the period at issue (Tr. 222-26).  As well, Dr. Detore's assessment was considered and discounted by

the previous ALJ since it was based largely on Plaintiff's subjective complaints and was inconsistent with the record evidence (Tr. 100).  Further, it is apparent to this court that Dr. Detore's November 2000 assessment is inconsistent with the evidence from the period at issue which reflects that while Plaintiff had symptoms from depression prior to receiving treatment, she felt "100 percent better" after receiving counseling and medication at Chestnut Ridge (Tr. 380-84).  The records from the relevant period also show that Plaintiff had goal-directed thoughts, was alert and oriented, had an adequate memory and average intelligence, had intact insight and judgment, and did not exhibit impulsive behavior (Tr. 386).  Thus it appears the ALJ properly gave no weight to Dr. Detore's November 2000 assessment of Plaintiff.

In reviewing the medical evidence covering the appropriate time period here, the district court should conclude that the ALJ's step three analysis was sufficient to permit meaningful review and, thus, complied with <u>Burnett</u>.  <u>See</u> <u>Jones v. Barnhart</u>, 364 F.3d 501, 505 (3d Cir. 2004)(stating that <u>Burnett</u> requires "sufficient development of the record and explanation of findings to permit meaningful review," and not use of particular language or adherence to a particular format).

Although not identified by number, it is clear that the ALJ evaluated Plaintiff using the criteria of Listing 12.04 and

properly concluded that she did not meet the Listing.  In order to be found disabled under Listing 12.04, the regulations require that an individual meet the criteria set forth in both part A and part B or part A and part C of the Listing.  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04.  Part B of Listing 12.04 requires that a claimant's impairment result in at least two of the following: (1) a marked restriction on activities of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in concentration, persistence, and pace resulting in a frequent failure to complete tasks in a timely manner; or (4) repeated episodes of deterioration or decompensation in work-like settings.  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04B.  Part C of Listing 12.04 requires the claimant to have had repeated episodes of decompensation, each of extended duration; a likelihood of decompensation with even a minimal increase in mental demands or change in the environment; or an inability to live outside a highly supportive living arrangement.  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04C.

        The ALJ discussed the Part B and C criteria of Listing 12.04 (Tr. 17).  Specifically, she found that Plaintiff had only mild to moderate restrictions with regard to daily activities; concentration, persistence, and pace; and social functioning (Tr. 17).  The ALJ also noted that Plaintiff had no episodes of decompensation and had never been hospitalized as a result of her

alleged mental impairment (Tr. 17).  Therefore, the ALJ concluded that Plaintiff did not meet Listing 12.04

The evidence from the relevant period supports the ALJ's finding that Plaintiff did not meet Listing 12.04. Specifically, Dr. Singer, the state agency psychologist, found that Plaintiff did not meet Listing 12.04 (Tr. 303-13).  See 20 C.F.R. § 416.927(f)(2)(I) (providing that because state agency medical consultants are "highly qualified" psychologists and "experts" in Social Security disability evaluations, their opinions with regard to the severity of a claimant's condition are entitled to significant weight).  In addition, Dr. Iyengar opined that prior to receiving medication, Plaintiff had a GAF of 55, which indicated only moderate functional problems (Tr. 386). After receiving medication, Plaintiff admitted that her mental impairment was "100 percent better," which, as the Commissioner argues, suggests Plaintiff's functional limitations were, at worst, in the mild-to-moderate range (Tr. 384).  Of note, Plaintiff felt that she was able to watch three senior citizens for seven hours for one day a week and work at a nursing home for three days a week (Tr. 17, 379-80).  Accordingly, it appears that the ALJ properly found that Plaintiff's impairments did not meet or equal Listing 12.04.

As noted, Plaintiff also asserts that the ALJ should have evaluated Plaintiff's back condition under Listing 1.04.

15

Significantly undercutting the argument that she met Listing 1.04
is the fact that Plaintiff admitted at the administrative hearing
that her physical impairments had not changed since the previous
ALJ found, on June 21, 2001, that she did not meet any
musculoskeletal listing (Tr. 16-17, 72, 96).  We note as well,
that Plaintiff did not cite to any record evidence to support her
claim that she met Listing 1.04.

There are three sets of criteria under Listing 1.04.
As the Commissioner correctly notes, Plaintiff did not, and
cannot, show that her impairment met or equaled any of the
criteria.  20 C.F.R. pt. 404, subpt. P., app. 1, § 1.04A-C.
Plaintiff did not meet Listing 1.04A because she had no muscle
atrophy, no motor deficits, and normal reflexes (Tr. 287,
296-97).  See 20 C.F.R. pt. 404, subpt. P., app. 1, § 1.04A
(requiring a disorder of the spine resulting in nerve root
compression with neuro-anatomic distribution of pain, limitation
of motion of the spine, motor loss (atrophy with associated
muscle weakness) accompanied by sensory or reflex loss).
Plaintiff did not meet Listing 1.04B, because she could not
demonstrate with an operative note or pathology report that she
had spinal arachnoiditis.  See 20 C.F.R. pt. 404, subpt. P.,
app. 1, § 1.04B.  Plaintiff did not meet Listing 1.04C because
she did not have lumbar spinal stenosis resulting in

16

pseudoclaudication.  See 20 C.F.R. pt. 404, subpt. P., app. 1,
§ 1.04C.

In our view, the ALJ's step three analysis was
sufficient to permit meaningful judicial review because she
discussed the probative evidence from the record and reasonably
found that Plaintiff failed to prove that she met or equaled any
listed impairment (Tr. 16-17).  Accordingly, the district court
should affirm the ALJ's decision that Plaintiff did not meet or
equal any listed impairment, including Listings 1.04 and 12.04.

Plaintiff's second argument is that the ALJ's finding
that Plaintiff can perform a wide range of light work is not
supported by substantial evidence since the medical evidence and
the VE's testimony demonstrate that Plaintiff is unable to
perform substantial gainful activity.  She also complains that
the ALJ unreasonably dismissed her testimony as not credible.

In concluding that Plaintiff was not disabled within
the meaning of the Act, the ALJ found that Plaintiff's complaints
of debilitating symptoms were only partially credible (Tr. 18).
The ALJ, as the finder of fact, is given significant discretion
in making credibility findings.  See Van Horn v. Schweiker, 717
F.2d 871, 873 (3d Cir. 1983) (providing that credibility
determinations as to a claimant's testimony regarding his
limitations are for the ALJ to make).  When evaluating a
claimant's credibility, the ALJ is required to ascertain whether

17

she has a medically determinable impairment that could reasonably cause the symptoms alleged and then evaluate the intensity and persistence of the claimant's symptoms to determine whether they limit her capacity to work.  20 C.F.R. § 416.929; see also Hartranft, 181 F.3d at 362.  As the Third Circuit has explained, the ALJ must "determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it."  Hartranft, 181 F.3d at 362.

Here, the ALJ noted that although Plaintiff alleged debilitating symptoms, she agreed to watch three senior citizens for seven hours on Fridays and agreed to work with her sister-in-law at a nursing home for three days a week (Tr. 17, 379-80). Plaintiff also complained that she had carpal tunnel syndrome, yet she continued to crochet (Tr. 67).  In addition, Plaintiff stated that, despite her impairments, she still performed a wide range of activities, including cooking four days a week, reading novels, doing laundry, sweeping floors, dusting, doing the dishes, shopping, watching television, and occasionally attending church (Tr. 47-52).  By her own testimony, Plaintiff's activities are inconsistent with her claim of debilitating symptoms.

The ALJ also noted the objective medical evidence in finding that Plaintiff was not entirely credible (Tr. 18).  The objective medical evidence reflects that Plaintiff had normal range of motion of the hips, knees, ankles, and upper

extremities; no muscle atrophy; no joint swelling or tenderness; intact distal pulses; an unremarkable gait; normal power; normal tone; normal coordination; and normal reflexes (Tr. 286, 296-97). The objective medical evidence also shows that while Plaintiff had depression, she also had goal-directed thoughts; was alert and oriented; had an adequate memory and average intelligence; had intact insight and judgment; and did not exhibit impulsive behavior (Tr. 386). In our view, the objective medical evidence supports the ALJ's finding that Plaintiff's complaints of debilitating symptoms were not entirely credible.

In addition, the ALJ noted that Plaintiff's mental condition improved with conservative treatment (Tr. 17). After starting medication, Plaintiff admitted that she was feeling "100 percent better" (Tr. 17, 384). By November 2001, Plaintiff admitted that she was "doing pretty good," dealing with stress better, sleeping better, and had no side effects (Tr. 381). It appears that Plaintiff's treatment notes further support the ALJ's finding that Plaintiff's complaints of debilitating symptoms were not entirely credible.

Further to the issue of whether the Plaintiff can engage in substantial gainful activity, we note that the responsibility for deciding a claimant's residual functional capacity (RFC), i.e., what a claimant can do despite her limitations, rests with the ALJ and is based on consideration of

19

all of the evidence of record.  20 C.F.R. § 416.946.  Here the
ALJ recognized and accommodated Plaintiff's physical limitations
by finding that she could perform only light work with a
sit/stand option (unskilled work requiring one-step or two-step
instructions with routine, repetitive processes involving things
rather than people), which required no more than four hours of
standing/walking and no climbing, kneeling, crawling, stooping or
crouching on more than a rare occasion; and which required no
exposure to pulmonary irritants, temperature extremes, dampness,
wetness, excessive humidity, dangerous machinery, and unprotected
heights (Tr. 20, Finding No. 7).  This finding is supported by
the opinion of Dr. Shroff, who examined Plaintiff twice and
concluded that she could perform a range of light work with
occasional postural activities, but must avoid cold temperatures
and humidity due to her bronchial asthma (Tr. 289-90).[6]  Our
review of the record found no medical source who stated that
Plaintiff had greater physical limitations than the ALJ found.

It is apparent that the ALJ also accommodated
Plaintiff's mental limitations by limiting her to low stress
work, which was defined as unskilled work requiring one-to-two
step instructions with routine, repetitive processes involving

---

[6]     As the Commissioner points out, this opinion was also
consistent with the RFC finding in the previous decision,
which is significant because Plaintiff admitted that her
physical condition had not changed since the previous
decision (Tr. 72, 104, Finding 7).

things rather than people (Tr. 20, Finding No. 7).  The ALJ's
mental RFC finding is supported by Dr. Singer's opinion that
Plaintiff was not significantly limited in the ability to
remember locations and work-like procedures; remember and carry
out short, simple instructions; sustain an ordinary routine; make
simple work-related decisions; ask simple questions; maintain
appropriate behavior; and be aware of normal hazards
(Tr. 317-18).  It was also consistent with Dr. Iyengar's finding
that Plaintiff had goal-directed thoughts, was alert and
oriented, had an adequate memory, average intelligence, intact
insight and judgment, and did not exhibit impulsive behavior
(Tr. 386).  Accordingly, the ALJ properly determined that
Plaintiff retained the mental functional capacity to perform low
stress work.

        The ALJ included all of Plaintiff's limitations in the
hypothetical given to the vocational expert (Tr. 79-81).  The
vocational expert testified that an individual with such
limitations would still be able to perform work as a photographic
machine operator, garment folder, plastic design applier,
assembler of printed products, laminator, and taper of printed
circuit layouts, all of which existed in significant numbers in
the national economy (Tr. 81-83).  In light of the vocational
expert's testimony, the ALJ concluded that Plaintiff was not
disabled within the meaning of the Act.

Although Plaintiff now asserts that she had additional limitations, these additional limitations do not appear to be supported by the evidence of record. For example, Plaintiff claims that the ALJ should have found that Plaintiff needed two or more days off from work per month. We found no medical source of record who indicated that Plaintiff had such a limitation during the period at issue. Plaintiff also argues that if her testimony regarding her subjective symptoms were found to be fully credible, she would be unable to work. As discussed above, the ALJ reasonably found that Plaintiff's subjective complaints were only partially credible (Tr. 17-18).

Because the ALJ's hypothetical question to the vocational expert appears to have fairly set forth all of Plaintiff's limitations that were supported by the record, the vocational expert's testimony regarding the existence of jobs that Plaintiff could perform constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff is not disabled. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).[7]

---

[7]    The court notes that Plaintiff submitted medical records from the office of Richard Kaplan, M.D., to the Appeals Council after the ALJ issued her decision in this case (Tr. 432-40). We may not consider this evidence, however, since the Third Circuit has ruled that a claimant cannot use evidence that was not before the ALJ to argue that the ALJ's decision was not supported by substantial evidence. Matthews v. Apfel, 239 F.3d 589, 594 (3d Cir. 2001) (holding that a reviewing court can only look at the evidence that was actually presented to the ALJ in determining whether that

Summary judgment is appropriate when there are no disputed material issues of fact, and the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56; Edelman v. Commissioner of Social Sec., 83 F.3d 68, 70 (3d Cir. 1996).  In the instant case, there are no material factual issues in dispute, and it appears that the ALJ's conclusion is supported by substantial evidence.  For this reason, it is recommended that Plaintiff's motion for summary judgment be denied, that Defendant's motion for summary judgment be granted, and that the decision of the Commissioner be affirmed.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of the

---

decision is supported by substantial evidence).  While the district court may remand the case to the Commissioner if such evidence is "new" and "material" and if there is "good cause" as to why the claimant did not present it to the ALJ prior to her decision, 42 U.S.C. § 405(g) (sixth sentence); See Matthews, 239 F.3d at 594 (citing Szubak v. Secretary of Health and Human Services, 745 F.2d 831, 833 (3d Cir. 1984)), Plaintiff does not appear to make this argument and, in any event, we conclude that Plaintiff cannot make the required showing for a sixth sentence remand.  Dr. Kaplan's records are not "new" since they predate the administrative hearing by two to five months.  They are not "material" since they do not demonstrate any greater limitations than the ALJ found.  Lastly, Plaintiff has not provided any justification for failing to present this evidence to the ALJ and, thus, has not shown "just cause."

objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

Respectfully submitted,

s/ Amy Reynolds Hay
AMY REYNOLDS HAY
United States Magistrate Judge

Dated: 16 September, 2005.

cc:  N. Leah Fink, Esquire
     Kinkel & Fink, LLP
     1208 Allegheny Building
     429 Forbes Avenue
     Pittsburgh, PA 15219

     Office of the United States Attorney
     700 Grant Street
     Suite 400
     Pittsburgh, PA 15219